# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

PETER VISKUP,

             Defendant.

CRIMINAL CASE NO.

1:12-CR-00263-ODE-JFK

## <u>REPORT AND RECOMMENDATION</u>

Pending before the court is Defendant Peter Viskup's motion [Doc. 21] to dismiss Count Three of the indictment for lack of personal jurisdiction, motion [Doc. 22] to dismiss for multiplicity, and motion [Doc. 23] to dismiss Counts One and Two for improper venue.  In response to the motion to dismiss for lack of personal jurisdiction, the Government advised at the pretrial conference that Count Three of the indictment will be dismissed.  Accordingly, upon dismissal of Count Three, the court **RECOMMENDS** that the motion [Doc. 21] to dismiss be **DENIED** as **MOOT**.  The Government opposes the motions to dismiss for multiplicity and for improper venue. [Docs. 28 and 29].  After consideration of the arguments of the parties and the relevant legal authority, the court **RECOMMENDS** that the motions [Docs. 22 and 23] be **DENIED**.

## I.    Background Facts

On August 21, 2012, Defendant Viskup was indicted by a federal grand jury sitting in this district with violations of 18 U.S.C. § 1204, the International Parental Kidnaping Crime Act ("IPKCA"), Counts One and Two, and with violation of 18 U.S.C. § 1542, making a false statement in connection with securing a passport, Count Three.  The indictment alleges in pertinent part that on or about "July 5, 2012, in the Northern District of Georgia and elsewhere," Defendant removed a child ("KV") "from the United States with the intent to obstruct the exercise of another person's parental rights[.]"  [Doc. 1, Count One].  And the indictment further alleges that on or about "July 14, 2012, and in the Northern District of Georgia and elsewhere," Defendant retained KV "(who had been inside the United States) outside of the United States with the intent to obstruct the exercise of another person's parental rights[.]"  [Doc. 1, Count Two].

As background to the indictment, the Government offered the following information.  On February 8, 2011, a superior court judge signed a Final Order regarding the custody, visitation and child support for KV, Defendant's child.  [Doc. 28, Attachment A].  Included in that order was the provision that Defendant could not remove KV from the United States without first providing forty-five days notice to

2

KV's mother.  [Id.].  For the summer of 2012, Defendant and KV's mother agreed that Defendant would have KV for summer visitation from June 19, 2012, through July 13, 2012.  [Doc. 28, Attachment B].  On June 19, 2012, KV was, according to the Defendant and the Government, delivered to Defendant at his residence located within the Northern District of Georgia.  [Doc. 23 at 1; Doc. 29 at 2].  Thereafter, on June 28, 2012, Defendant was served at his residence with a contempt motion alleging violations of the February 8, 2011, order.  On July 5, 2012, the Government further asserts that Defendant removed KV from the United States taking a flight from New York to Europe and that, sometime later, Defendant was found on the Canary Island.  [Doc. 28 at 2].

## II.  Multiplicity

Defendant contends that Counts One and Two of the indictment, both charging a violation of 18 U.S.C. § 1204, involving KV's removal from the United States and his subsequent retention outside the United States, are multiplicitous.  [Doc. 22]. Defendant, citing United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998), contends that the two counts charge one crime as determined by applying the factors (common goal, nature of underlying scheme, and overlap of participants) set forth by the Eleventh Circuit Court of Appeals.  [Id. at 3].  The court in Alred, however, was not

3

addressing whether two counts were multiplicitous but, instead, whether an indictment charging a single conspiracy should have been charged as multiple conspiracies.  Alred, 144 F.3d at 1414.  Defendant's reliance on Alred is misplaced as is his analysis of the issue to be decided by the court.

"'An indictment is multiplicitous if it charges a single offense in more than one count.'"  United States v. Jones, 601 F.3d 1247, 1258 (11th Cir. 2010) (citation omitted).  There are two potential vices associated with a multiplicitous indictment: "'First, the defendant may receive multiple sentences for the same offense.  Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes–not one.'"  United States v. Smith, 231 F.3d 800, 815 (11th Cir. 2000) (quoting United States v. Langford, 946 F.2d 798, 802 (11th Cir. 1991)).  In order to determine whether the counts are multiplicitous, the court must analyze issues involving double jeopardy "under the test set forth by the Supreme Court in Blockburger v. United States, [52 S. Ct. 180] (1932)."  United States v. Carson, 447 Fed. Appx. 925, 926 (11th Cir. 2011).[1]  "'[T]he Blockburger test is one of statutory

---

[1]"Although Blockburger addressed criminal offenses in separate statutory sections, this same test has been applied to several offenses enumerated in one statutory section."  United States v. Santos-Gomez, 2012 WL 1939726, at *1 (N.D. Ga. May 29, 2012).

4

interpretation in which we examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments.'" Id. (quoting United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008)).  In using that test, the court determines "'whether an indictment is multiplicitous [by] verifying that each count requires an element of proof that the other counts do not require.'" Jones, 601 F.3d at 1258 (citation omitted); see also Carson, 447 Fed. Appx. at 926 (the court determines "if each offense 'requires proof of an additional fact which the other does not'") (citation omitted).  The test is satisfied despite substantial overlap of the evidence introduced on separate offenses.  See United States v. Hassoun, 476 F.3d 1181, 1185 (11th Cir. 2007) ("'If each [count] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'") (citation omitted); United States v. Boldin, 772 F.2d 719, 726 (11th Cir. 1985) ("Similarly, a substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar.").

"Where the potentially multiplicitous violations are all charged under a single statute, the key question 'is whether the legislature authorized separate punishments for separate offenses.'" Carson, 447 Fed. Appx. at 925 (quoting Ward v. United States, 694 F.2d 654, 661 n.13 (11th Cir. 1983)); see also United States v. Fee, 491 Fed. Appx.

151, 157 (11th Cir. 2012) ("When an indictment contains more than one count charging a violation of the same statute, our inquiry concerns whether Congress intended the different acts underlying each count to constitute a separate offense.").  This involves determining "'the allowable unit of prosecution.'"  <u>Smith</u>, 231 F.3d at 815 (citation omitted); <u>and see</u> <u>United States v. Jones</u>, 2007 WL 2301420, at *10 (N.D. Ga. July 18, 2007) ("The principle underlying this rule is that the 'unit of prosecution' for a crime is the *actus reus*, the physical conduct of the defendant.").

"Congress enacted the [IPKCA] in 1993 to 'deter the removal of children from the United States to foreign countries in order to obstruct parental rights.'"  <u>United States v. Newman</u>, 614 F.3d 1232, 1235 (11th Cir. 2010) (citation omitted).  "In furtherance of that objective, the IPKCA makes it a federal felony for a parent to remove a child from the United States, *or* to retain outside the United States a child who has been in the United States, with the intent to obstruct the other parent's lawful exercise of his or her parental rights."  <u>Id.</u> at 1236 (emphasis added); <u>and see</u> <u>United States v. Shahani-Jahromi</u>, 286 F. Supp. 2d 723, 728 (E.D. Va. 2003) ("By deterring *both* the removal of children from the United States to foreign countries *and* the retention of such children there in order to obstruct parental rights, the IPKCA is

directly aimed at furthering" Congress' interest in ensuring parental rights.) (emphasis added).

An individual may violate the statute in two ways. If a child is in the United States and is removed by a parent from the United States, with the intent to obstruct the other parent's rights, the law has been violated. See United States v. Miller, 2012 WL 1435310, at *2 (D. Vt. April 25, 2012). The Government contends that Defendant, on or about July 5, 2012, committed a violation of that provision of § 1204(a) when he left the country with KV in violation of the custody order of the Cherokee County Superior Court Judge. Therein, Defendant was ordered not to remove KV from the United States without providing forty-five days notice to the mother. And the removal followed Defendant receiving a motion for contempt based on alleged violations of the Final Order. [Doc. 1; Doc. 28 at 3-4, Attachment A]. The Government is not required to prove that Defendant retained KV outside of the United States to establish a violation of this provision of § 1204(a).

The statute may also be violated, if a child, who had been in the United States, is retained outside the United States with the intent to obstruct parental rights. An example of violation of that provision is outlined in Shahani-Jahromi, 286 F. Supp. 2d at 728. In that case, the child was removed from the United States lawfully by the

7

custodial parent, the mother, to visit family in Iran, when the other parent, the father, physically removed the child from the mother's custody and relocated elsewhere keeping the child from the mother for seven years.  Id.  Likewise, in this case, on and after July 14, 2012 - the date on which KV was to have been returned to his mother's custody, Defendant retained KV outside the United States allegedly with the intent to obstruct the other parent's rights.  [Doc. 1; Doc. 28 at 4].  To establish a violation of this provision, the Government is not required to prove that Defendant removed KV from the United States.

Accordingly, § 1204(a) proscribes two distinct but overlapping acts:  removal of the child from the United States *or* retaining the child outside the United States. Congress created one offense to cover these acts perhaps recognizing that each act will often transpire in conjunction with one another.   And while separate units of prosecution might not lie where there is no distinction between the removal of the child from the United States and retaining the child, after removal, outside the United States, here the Government did charge two distinguishable violations as outlined *supra*, each requiring "'proof of an additional fact which the other does not.'"  Carson, 447 Fed. Appx. at 926.

8

For these reasons, the court **RECOMMENDS** that Defendant's motion [Doc. 22] to dismiss for multiplicity be **DENIED**.

## III.   Improper Venue

Defendant contends that Counts One and Two should be dismissed because the charges are not properly brought in the Northern District of Georgia pursuant to 18 U.S.C. § 3237(a).  [Doc. 23].  The Government contends that venue is proper in this district because the offenses charged began with the removal of KV from this district. [Doc. 39 at 3].

"It is by now well-settled that venue is an essential element of the government's proof at trial.  'Questions of venue . . . are not to be taken lightly or treated as mere technicalities. . . .'"  United States v. Snipes, 611 F.3d 855, 865-66 (11th Cir. 2010) (citation omitted).  Rule 18 of the Federal Rules of Criminal Procedure as well as the U.S. Constitution and the Sixth Amendment "'guarantee defendants the right to be tried in the district in which the crime was committed.'"  Id. at 866 (citation omitted). However, Defendant improperly attempts to test the facts upon which venue is asserted in a pre-trial motion to dismiss.

9

The Eleventh Circuit Court of Appeals recently reiterated the law regarding attacks on the sufficiency of an indictment:  "By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.' . . . 'For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet.' . . . 'An indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.'" United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations omitted).  In this regard "an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. . . .  An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime." United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985); see also United States v. Dabbs, 134 F.3d 1071, 1079 (11th Cir. 1998) ("We deem an indictment sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.").

10

In resolving Defendant's pretrial motion to dismiss, the court is not determining whether the Government's evidence is sufficient to find that venue is proper in this District - such a determination is left to the trial jury.  See Snipes, 611 F.3d at 866 ("a jury must decide whether the venue was proper"); Sharpe, 438 F.3d at 1263 ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes. . . .  It is well-settled that 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'") (citations omitted; emphasis in original); see also United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . .  The sufficiency of a criminal indictment is determined from its face.").  These considerations apply equally to a facially sufficient indictment, such as returned by the properly constituted grand jury in this case, that pleads that the offenses occurred in the Northern District of Georgia.  See United States v. Williams, 2010 WL 3488131, at *4 (N.D. Ga. August 2, 2010) ("An indictment need not specify the exact location of the offense, but rather must be sufficiently specific to allege that the crime was committed within the jurisdiction of the court."), adopted at 2010 WL 3488130 (N.D. Ga. August 30, 2010).

In <u>Snipes</u>, the court noted that "the grand jury returned a facially sufficient indictment, with a clear statement of venue." 611 F.3d at 866. Such an indictment, "if valid on its face, is enough to call for trial of the charge on the merits." <u>Id.</u> The court further held that it would not have been appropriate for the court to make a finding on any pretrial consideration of the facts. <u>Id.</u>; <u>see also</u> <u>United States v. Valencia-Munoz</u>, 2010 WL 4962972, at **2-3 (N.D. Ga. October 26, 2010), <u>adopted at</u> 2010 WL 4965873 (N.D. Ga. December 1, 2010); <u>Williams</u>, 2010 WL 3488131, at **3-4. The same is true in this case. Counts One and Two allege that the charged offense occurred "in the Northern District of Georgia and elsewhere[.]" [Doc. 1]. Venue is sufficiently alleged.

Defendant may, of course, after the close of the Government's case, challenge the sufficiency of the evidence offered in support of venue by moving for a judgment of acquittal. <u>See</u> <u>Valencia-Munoz</u>, 2010 WL 4962972, at *4 (citing <u>Salman</u>, 378 F.3d at 1268). "The Eleventh Circuit applies the following test in determining whether venue is proper: 'whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict . . . the Government proved by a preponderance of the evidence' that the crimes occurred in the district in which the defendant was prosecuted." <u>Williams</u>, 2010

12

WL 3488131, at *3 (quoting <u>United States v. Males</u>, 715 F.2d 568, 569 (11th Cir. 1983);

<u>United States v. White</u>, 611 F.2d 531, 535 (5th Cir. 1980)).   In making this

determination, the parties agree that § 1204 does not contain a venue provision and that

kidnaping is a continuing offense and, therefore, that the venue provision of 18 U.S.C.

§ 3237(a) governs.[2]   [Docs. 23 and 29].   Accordingly, after the close of the

Government's case is the proper time to challenge whether the Government has proven

by a preponderance of the evidence that the offenses charged in Counts One and Two

began, continued or were completed within the Northern District of Georgia.   <u>See</u>

<u>Miller</u>, 2012 WL 1435310, at *5, *9  (and denying pretrial motion to dismiss for

improper venue).

    For these reasons, the court **RECOMMENDS** that Defendant's motion [Doc. 23]

for improper venue be **DENIED**.

## IV.   Conclusion

    Accordingly, the court **RECOMMENDS** that, upon the Government's dismissal

of Count Three of the indictment, Defendant's motion [Doc. 21] to dismiss that count

be **DENIED** as **MOOT**; that Defendant's motion [Doc. 22] to dismiss for multiplicity

---

    [2]Section 3237(a) provides that an offense "begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).

be **DENIED**; and that Defendant's motion [Doc. 23] to dismiss Counts One and Two for improper venue be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO RECOMMENDED AND ORDERED** this 31st day of October, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

14